IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                                                    CRIMINAL ACTION NO. 3:07-00050

BARRY J. WORKS

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Suppress [Docket no. 25]. The Court held a hearing on the motion on August 9, 2007. Upon consideration of the arguments and the evidence, and for the following reasons, the Court **DENIES** Defendant's motion.

## FACTS

Defendant was arrested on January 26, 2007, following a *Terry* stop in the stairwell of a small apartment building. Several police officers testified at the suppression hearing to describe the course of events. Sergeant Combs received a tip, from a source he did not identify in his testimony, that a blue Chrysler was delivering drugs to an apartment where others would meet to receive the drugs. His information was that such deliveries had occurred and would continue but with no specific time or date. He was further informed that the Chrysler belonged to an individual named Patrick Bryant and would be driven by Bryant's girlfriend. Combs learned that Bryant resided in one of four apartments located in the building and that Bryant was on home confinement due to a drug-related conviction. Based on this information, Combs and other officers conducted surveillance of the apartment building - around 8:00 or 9:00 p.m. on January 26, 2007.

Combs stationed himself a short distance from the apartment building - apparently with a view of the rear of the building. He noticed a Bronco, parked but with its lights on, near the rear entrance. He later observed three or four people approach the rear entrance, and assumed they had entered. Then, a dark Chrysler arrived and its occupants appeared to enter the building. Based on these observations, Combs contacted home confinement officers and asked them to search Bryant's apartment. The home confinement officers identified Bryant's apartment as one on the second floor. Comb and his group of officers decided to watch the back door of the apartment while the home confinement officers went to the front door entrance for their search. Combs testified that he observed the home confinement officers approaching the front entrance as he went to the rear of the building. Within moments, Combs entered the rear door where there was a stairwell leading to the second floor. As he and uniformed officers entered the stairwell, he saw Defendant exit Bryant's apartment. Defendant was holding what appeared to be a plastic grocery bag. Combs shouted "Hey, stop." Defendant then tried to open a door across the hall but it was locked. As Defendant tried to reenter Bryant's door, Combs went up the stairs and grabbed Defendant. Combs testified that Defendant tried to conceal the bag and that he felt it to determine if there was a weapon inside. He asked Defendant what was in the bag and the defendant replied "flour." Combs testified it felt "mushy." Combs did not seize the bag. Because he was in a narrow hallway with several doors, Combs immediately decided to "pass" the defendant down to other officers in the stairwell behind him.

Detective Bills was on the stairs, and as Defendant met him, Bills directed him down to the next officer at the bottom of the stairs, Corporal Livingston. As he approached Livingston, Defendant switched the bag from one hand to the other and tried to tuck it under his arm, appearing

to try to hide the bag. Livingston conducted a pat-down search of Defendant and took the bag. He also asked Defendant what was in it, and again Defendant stated "flour." Livingston replied that it didn't feel like flour and gave the bag to Bills while he performed a pat down search of Defendant. Bills then looked into the bag, believing it could hold a weapon or contraband. He found 248 grams of cocaine inside the bag.

## DISCUSSION

Defendant argues that the evidence seized from him should be suppressed because the police officers did not have reasonable suspicion to stop and frisk him and there were no additional circumstances present to allow a further search of the opaque plastic bag without a warrant. In its Response, the Government argues that the stop and frisk was justified by reasonable suspicion based on the totality of the circumstances and the officers' collective experience with drug matters. Additionally, the Government responds that the police officers were justified in opening the opaque plastic bag to assure officer safety.

The inquiry in this case is therefore two-fold: first, whether the stop was justified at its inception and second, whether the scope of the search was valid.

*Terry Stop was Justified at its Inception*

A stop and frisk, or *Terry* stop, is a recognized exception to the warrant requirement of the Fourth Amendment. Under *Terry v. Ohio*, 392 U.S. 1 (1968), if an officer observes "unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot," he may briefly stop and conduct a limited search "to determine whether the person is in fact carrying a weapon." *Terry*, 392 U.S. at 30, 24. This protective search can be based on the officer's reasonable suspicion - a standard lower than probable cause. *Alabama v. White*, 496 U.S. 325, 330 (1990).

Reasonable suspicion considers the "totality of the circumstances," but requires that the officers "have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417-418 (1981). The totality of the circumstances considers "various objective observations" from which an officer can make deductions about the circumstances. *Id.* at 418. The officer need not be absolutely sure of his conclusions; he need only infer that there is a probability that the individual is, or is about to be, involved in criminal activity. *Id.*

Thus the standard for reasonable suspicion is an objective one, requiring "some minimal level of objective justification" for making the stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *INS v. Delgado,* 466 U.S. 210, 217 (1984)); see also *Terry v. Ohio*, 392 U.S. at 27. Accordingly, as the Fourth Circuit stated, "the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his own subjective intent or motivation." *United States v. Swann*, 149 F3d 271, 276 (4th Cir 1998).

Looking at the totality of circumstances in this case and the objective viewpoints of the officers, the initial stop of Defendant was reasonable. The officers were present in the building to investigate a tip that there were drugs in Bryant's apartment. They first saw Defendant leaving from the back door of Bryant's apartment at the same moment that home confinement officers entered the front door to perform a search of Bryant's home. Upon seeing the officers, Defendant attempted to conceal the bag he was holding and quickly tried to enter another door so as to avoid passing the officers in the hallway. Finding the door was locked, he attempted to go back into Bryant's apartment. After the police told Defendant to stop, he did so willingly, but again tried to conceal the bag. Taking into consideration the totality of the circumstances, including the police officer's observations of the

Defendant, the initial stop of Defendant was objectively reasonable, based on a reasonable suspicion that Defendant was engaged in criminal conduct.

*Scope of Search is Justified by Officer Safety*

Given that the initial stop was valid, the second inquiry is whether the scope of the search - namely Detective Bills's decision to open the opaque plastic bag - was valid under the Fourth Amendment.

As mentioned, the notion underlying a *Terry* stop is that officers can ensure that the individual does not possess a weapon, thereby assuring officer safety. The standard remains objective; the scope of the search must be objectively reasonable given the totality of the circumstances. *See Terry v. Ohio*, 392 U.S. at 21-22; *U.S. v. Cortez,* 449 U.S. at 417-418; *U.S. v. Swann*, 149 F3d at 276.

Here, upon stopping Defendant, Sergeant Combs felt the bag and simultaneously asked what it was. Upon hearing that it was "flour," he stated that it did not feel like flour. Because Combs encountered Defendant in a narrow hallway with additional doors, he was reasonably apprehensive about securing Defendant so he passed him down the stairs to officers Bills and Livingston. Both Bills and Livingston heard Defendant's interaction with Combs, and decided to frisk Defendant's person to be certain that he did not have any weapons. Corporal Livingston handed the plastic grocery bag to Detective Bills so that Defendant was not holding the bag during the frisk of his person. Although Detective Bills heard Defendant say that the bag contained flour, both officers thought the bag did not feel like flour. Because the officers were uncertain as to what was actually inside the bag, they could not be sure that it did not contain a weapon; accordingly, they opened the bag to ensure that there were no weapons. Again, given the totality of the circumstances - they were providing back-up during a search in a narrow hallway, Defendant tried to avoid the officers and conceal the bag, and the bag was

a plastic grocery bag containing something other than flour as Defendant claimed - it was objectively reasonable that the officers would want to be sure that there were no weapons in the bag, regardless of what Defendant told them the bag contained.  As stated in *Terry*, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. at 21-22.  At the moment of the seizure in this case, an officer using reasonable caution would want to know with certainty that there were no weapons in Defendant's bag.  Opening the bag was a minimal invasion; the officers were permitted to search for weapons in the context of a pat-down search to assure officer safety.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion to Suppress is **DENIED**.  The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion to counsel and the defendant, the U.S. Attorney's Office, and the U.S. Probation Office.

ENTER:       September 7, 2007

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE